IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHAD CONWAY,** | |
| **Plaintiff,** | |
| v. | Case No. 24-cv-364-RJD |
| **WEXFORD HEALTH SOURCES, INC., IDOC MEDICAL DIRECTOR, DR. PERCY MYERS, and JANE DOE NURSES #'s 1-4,** | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Chad Conway, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Centralia Correctional Center ("Centralia"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Conway alleges the defendants were deliberately indifferent to his need for medical care regarding an abdominal hernia, in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In the Complaint, Conway makes the following allegations: On March 17, 2019, while a pretrial detainee at Kane County Jail, Conway noticed a bulge in his abdomen (Doc. 1, p. 3). He was diagnosed with an abdominal hernia and scheduled for surgery. But before Conway's scheduled surgery, he was transferred into IDOC custody. On June 17, 2019, Conway transferred to Centralia (*Id*.). He immediately saw a doctor who prescribed an abdominal binder and stool softeners (*Id*.). Although Conway noted that he had previously been scheduled for surgery while at the county jail, the doctor informed Conway that it was the policy of Wexford Health Sources, Inc. to deny surgery unless the hernia was severe or strangulated (*Id*.). Conway pointed out that his hernia was larger than before and painful, but the doctor informed Conway that he would not receive surgery (*Id*.).

Over the next two years, Conway submitted four or more sick call slips for a referral for surgery (*Id*. at p. 3). Each time, the sick call request slip was reviewed by a nurse, identified by Conway as Jane Doe Nurses #'s 1-4, but the reviewing nurse failed to refer him to a doctor (*Id*.). Conway alleges that the nurses were trained regarding care for hernias and had the authority to determine when to refer an inmate to a doctor, but they refused his requests (*Id*.). The nurses informed Conway that Centralia lacked a full-time doctor at the time of his requests.

Conway further alleges that from 2021 until the present, IDOC has a medical director, labeled John Doe #1, who is aware of the understaffing in Centralia's medical unit (*Id.* at p. 4). He alleges that the medical director should have forced Wexford to properly staff the prison. Instead, the medical director continues to extend Wexford's contract. The lack of staffing at Centralia has interfered with Conway's ability to receive proper care. Conway further alleges that it is the medical director's responsibility to ensure that all inmates receive proper medical care (*Id.*). The medical director is also aware of Wexford's policy regarding hernias but has made no effort to force Wexford to change the policy.

On June 2, 2022, a nurse referred Conway to Physician Assistant ("PA") Josh (*Id.* at p. 4). PA Josh scheduled Conway for an ultrasound at St. Mary's Hospital. The ultrasound confirmed the presence of a hernia. Conway alleges that the ultrasound technician labeled the hernia as "very bad" (*Id.*). Upon his return to Centralia, Conway alleges that PA Josh intended to schedule Conway for surgery, but he resigned prior to scheduling surgery (*Id.*). On November 15, 2022 and March 1, 2023, Conway was scheduled to meet with Dr. Percy Myers regarding his hernia but both appointments were cancelled due to staffing shortages (*Id.*). On February 21, 2023, Conway spoke with a nurse who stated that she would have Dr. Myers review his chart. On March 8, 2023, Dr. Myers reviewed the chart and ultrasound results without formally meeting with Conway (*Id.* at p. 5). Dr. Myers denied the request for surgery even though Conway was in extreme pain. Conway also contends that by this point his hernia was strangulated and

very large in size (*Id.*). Still, Dr. Myers held to Wexford's policy of denying surgery for all hernias (*Id.*). Instead, Dr. Myers ordered an abdominal binder and stool softeners (*Id.*).

Despite continued requests for care, appointments, and surgery, Conway has not received his requested surgery or proper medical care. He alleges that a number of his sick call request slips have been cancelled and he has failed to receive proper care due to understaffing at the prison (*Id.*).

## **Preliminary Dismissals**

Simply put, Conway fails to state a claim against the Jane Doe Nurses and John Doe Medical Director. Conway identifies four Jane Doe nurses, but he fails to include any facts as to when he saw these individuals. He simply states that he submitted requests over the course of two years, but there are no facts to suggest when he submitted the requests, when the nurses reviewed the requests, or when he spoke to the nurses about the lack of a doctor at Centralia. There are also no allegations to suggest that the nurses acted with deliberate indifference. Conway alleges that the nurses did not schedule him to be seen by the doctor at Centralia because there were no doctors on staff at Centralia (Doc. 1, p. 3).

Conway also fails to state a claim against the unknown IDOC medical director. Conway alleges that the medical director knew that Wexford was understaffed and was aware of their improper treatment of inmates in regards to hernias, but failed to take any action (Doc. 1, pp. 5-6). But the medical director cannot be liable simply in his position as the director overseeing all medical care, because *respondeat superior*, or supervisory,

4

liability is not recognized under Section 1983. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). Nor are there any allegations to suggest the medical director was personally involved in Conway's care. *Smith v. Rohana*, 433 F. App'x 466, 469 (7th Cir. 2011) (medical director cannot be liable unless personally involved in plaintiff's care). Thus, any claim against the IDOC medical director is **DISMISSED without prejudice**.

### Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

>    **Count 1:**   **Eighth Amendment deliberate indifference claim against Dr. Percy Myers for failing to treat Conway's hernia and resulting pain.**
>
>    **Count 2:**   **Illinois state law negligence claim against Dr. Percy Myers for failing to treat Conway's hernia and resulting pain.**
>
>    **Count 3:**   **Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for the practice of lacking a full-time doctor at Centralia and having a policy of denying all surgical repairs for hernias, causing Conway continued pain from his hernia.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

5

**dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Conway states a viable claim in Count 1 against Dr. Myers for his refusal to provide appropriate care, including surgery, for Conway's hernia. His negligence claim in Count 2 derives from the same facts as his federal constitutional claims and will proceed against Dr. Myers. To ultimately pursue this claim, before the completion of the summary judgment phase of the case, Conway must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation against the defendant and a physician's report to support the assertions in the affidavit, pursuant to 735 ILCS § 5/2-622. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019).

Conway also states a viable claim in Count 3 against Wexford. In order to state a claim against Wexford, Conway must point to an "(1) an express [corporate] policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority" who caused the deprivation. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). *See also Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation). He alleges that Wexford had a policy of denying surgical intervention for hernias, unless they were enlarged or strangulated. Conway alleges this policy led to him being denied

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

surgical repair for his hernia. He also alleges that Wexford had a policy of understaffing the healthcare unit which caused delays in his care.

## Disposition

For the reasons stated above, Counts 1 and 2 shall proceed against Dr. Percy Myers. Count 3 shall proceed against Wexford Health Sources, Inc. The claims against Jane Doe Nurses #'s 1-4 and John Doe Medical Director are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Dr. Percy Myers and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Conway. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Conway, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Conway, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Conway is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act. Conway's motion for protective order (Doc. 3) is **DENIED as moot**.

    **IT IS SO ORDERED.**

    **DATED: 4/23/2024**

                                            s/ Reona J. Daly
                                            **REONA J. DALY**
                                            **United States Magistrate Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**